The STATE of Ohio, Appellee,

v.

CREECH, Appellant.

[Cite as *State v. Creech,* 188 Ohio App.3d 513, 2010-Ohio-2553.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 09CA3291.

Decided June 1, 2010.

brought to Trooper Wells's office in the prison, that those requirements attach. See *Porter* and *Swinney,* supra.

514

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Pat Apel, Assistant Prosecuting Attorney, for appellee.

Claire R. Cahoon, for appellant.[1]

PETER B. ABELE, Judge.

{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. The jury found Scott D. Creech, defendant below and appellant herein, guilty of (1) the illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041(A), (2) the illegal manufacture of drugs in violation of R.C. 2925.04(A), (3) four counts of having a weapon under disability in violation of R.C. 2923.13(A), (4) three counts of unlawful possession of dangerous ordnance in violation of R.C. 2923.17(A), and (5) the illegal manufacturing or processing of explosives in violation of R.C. 2923.17(B).

{¶ 2} Appellant raises the following assignments of error for review.

First Assignment of Error:

The trial court erred when it imposed separate sentences with regard to counts of illegal assembly or possession of chemicals for the manufacture of drugs and illegal manufacturing of drugs, as those counts were committed with a single animus, and therefore, are allied offenses of similar import and must merge for sentencing purposes.

Second Assignment of Error:

The trial court erred when it imposed separate sentences with regard to multiple counts of weapon under disability, as those counts were committed with a single animus, and therefore, are allied offenses of similar import and must merge for sentencing purposes.

Third Assignment of Error:

The trial court erred when it imposed separate sentences with regard to multiple counts of weapon under disability and unlawful possession of dangerous ordnance–stemming from the same items and possessed with a single animus, as those counts are allied offenses of similar import and must merge for sentencing purposes.

Fourth Assignment of Error:

---

1. Different counsel represented appellant during the trial court proceedings.

The trial court erred when it imposed separate sentences with regard to multiple counts of unlawful possession of dangerous ordnance, as those counts were committed with a single animus, and therefore are allied offenses of similar import and must merge for sentencing purposes.

Fifth Assignment of Error:

Trial counsel rendered ineffective assistance of counsel in violation of Mr. Creech's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

{¶ 3} On March 20, 2008, law-enforcement officers raided appellant's residence upon suspicion that it contained a methamphetamine lab. The search uncovered extensive evidence that the residence was being used to manufacture methamphetamine.

{¶ 4} On April 30, 2008, the Scioto County Grand Jury returned an indictment charging appellant with (1) the illegal possession of chemicals for the manufacture of drugs, (2) the illegal manufacture of drugs, (3) four counts of having a weapon while under a disability (counts three through six), (4) three counts of unlawful possession of dangerous ordnance (counts seven through nine), (5) illegally manufacturing or processing explosives, and (6) trafficking in methamphetamine.[2]

{¶ 5} After hearing the evidence, the jury found appellant guilty of (1) the illegal possession of chemicals for manufacture of methamphetamine, (2) the illegal manufacture of drugs, (3) having a weapon (a rifle) while under disability, (4) having a weapon (detonation cord) while under disability, (5) having a weapon (sensitized ammonium nitrate) while under disability, (6) having a weapon (blasting caps) while under disability, (7) unlawful possession of dangerous ordnance (sensitized ammonium nitrate), (8) unlawful possession of dangerous ordnance (blasting caps), (9) unlawful possession of dangerous ordnance (detonation cord), and (10) illegally manufacturing or processing explosives.

{¶ 6} On October 10, 2008, the trial court sentenced appellant to serve a total of 19 years in prison as follows: (1) five years for the illegal possession of chemicals for manufacture of methamphetamine (count one), (2) six years for the illegal manufacture of drugs (count two), (3) two years for having a weapon (rifle) while under disability (count three), (4) four years on each of the three having a weapon while under disability offenses that involved the detonation cord, the blasting caps, and the sensitized ammonium nitrate (counts four through six), (5) 11 months for each of the offenses of unlawful possession of dangerous ordnance (counts seven though nine), and (6) seven years for illegally manufacturing or

---

2. The trial court later dismissed the trafficking count.

processing explosives (count ten). The court ordered (1) the sentences for counts one and two to be served concurrently, (2) the sentence for count three to be served consecutively to counts one and two, (3) the sentences for counts four, five, and six to be served concurrently with each other, but consecutively to counts one and two and to count three, (4) the sentences for counts seven, eight, and nine to be served concurrently with each other and concurrently with counts four through six, and (5) the sentence for count ten to be served consecutively to counts one and two, count three, and counts four, five, and six. This appeal followed.

## I

{¶ 7} In his first four assignments of error, appellant asserts that the trial court erroneously sentenced him for allied offenses of similar import. Because the same analysis governs these four assignments of error, we have combined them.

## A

## STANDARD FOR DETERMINING WHETHER OFFENSES CONSTITUTE ALLIED OFFENSES OF SIMILAR IMPORT

{¶ 8} R.C. 2941.25 sets forth the statutory analysis for determining whether offenses constitute allied offenses of similar import:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 9} The Ohio Supreme Court has interpreted R.C. 2941.25 to involve a two-step analysis:

In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the

crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses.

*State v. Harris*, 122 Ohio St.3d 373, 2009-Ohio-3323, 911 N.E.2d 882, at ¶ 10, quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816; see also *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154; *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, at ¶ 14.

{¶ 10} To determine whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts must "compare the elements of offenses in the abstract, i.e., without considering the evidence in the case." *Cabrales* at ¶ 21; see also *Harris*, at ¶ 12. The elements need not, however, be identical for the offenses to constitute allied offenses of similar import. *Winn*, at ¶ 12. The key word is "similar," not "identical." *Winn* at ¶ 12; see also *Harris*, at ¶ 16 (stating that the offenses need not exactly align to constitute allied offenses). Offenses constitute allied offenses of similar import if, " 'in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other.' " *Winn* at ¶ 12, quoting *Cabrales* at ¶ 22.

{¶ 11} In *Harris*, a recent allied-offense-of-similar-import decision, the Ohio Supreme Court held that robbery and aggravated robbery are allied offenses of similar import and that R.C. 2903.11(A)(1) felonious assault and R.C. 2903.11(A)(2) felonious assault are allied offenses of similar import. In determining that robbery and aggravated robbery are allied offenses of similar import, the court explained:

Each count of robbery herein was charged under R.C. 2911.02(A)(2), which provides that no person, in attempting to commit or committing a theft offense, or fleeing immediately thereafter, shall "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another." Each count of aggravated robbery was charged under R.C. 2911.01(A)(1), which provides that no person, in attempting to commit or committing a theft offense, or in fleeing immediately thereafter, shall "[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

* * *

* * * The possession of a deadly weapon, used, shown, brandished, or made known to the victim during a theft or flight from a theft also constitutes a threat to inflict physical harm on that victim. Thus, robbery defined in R.C. 2911.02(A)(2) and aggravated robbery defined in R.C. 2911.02(A)(1) are so

similar that the commission of one offense will result in commission of the other.

Id. at ¶ 15 and 17.

{¶ 12} In *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, the court held that kidnapping and aggravated robbery are allied offenses of similar import. The court first examined the elements of the offenses in the abstract and then concluded that the commission of one necessarily results in commission of the other:

> In essence, the elements to be compared in the abstract are the restraint, by force, threat, or deception, of the liberty of another to "facilitate the commission of any felony" (kidnapping, R.C. 2905.01(A)(2)) and having "a deadly weapon on or about the offender's person or under the offender's control and either display[ing] the weapon, brandish[ing] it, indicat[ing] that the offender possesses it, or us[ing] it" in attempting to commit or committing a theft offense (aggravated robbery, R.C. 2911.01(A)(1)). It is difficult to see how the presence of a weapon that has been shown or used, or whose possession has been made known to the victim during the commission of a theft offense, does not also forcibly restrain the liberty of another. These two offenses are "so similar that the commission of one offense will necessarily result in commission of the other." *Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, paragraph one of the syllabus.

Id. at ¶ 21.

{¶ 13} In *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, the court held that aggravated assault under R.C. 2903.12(A)(1) and (A)(2) are allied offenses of similar import, even though commission of one offense does not necessarily result in the commission of the other. The court determined that because R.C. 2903.12(A)(1) aggravated assault required proof of serious physical harm and R.C. 2903.12(A)(2) did not, the violation of R.C. 2903.12(A)(2) would not necessarily result in the violation of R.C. 2903.12(A)(1). Instead of ending its analysis here, however, the *Brown* court further examined the legislative intent to determine whether the two offenses constituted allied offenses of similar import. The court stated that to determine whether the legislature intended to permit multiple punishment, a court may look to the societal interests protected under the statutes at issue. The *Brown* court referred to Justice Rehnquist's dissenting opinion in *Whalen v. United States* (1980), 445 U.S. 684, 709–711, 100 S.Ct. 1432, 63 L.Ed.2d 715, in which he wrote: " '[B]y asking whether two separate statutes each include an element the other does not, a court is really asking whether the legislature manifested an intention to serve two different interests in enacting the two statutes.' " Id. at ¶ 35, quoting *Whalen*, 445 U.S. at 714, 100 S.Ct. 1432, 63 L.Ed.2d 715 (Rehnquist, J., dissenting). The court stated

that it has "previously considered the societal interests protected by the relevant statutes" when determining whether two offenses constitute allied offenses of similar import. Id. at ¶ 36. *Brown* noted its previous holding in *State v. Mitchell* (1983), 6 Ohio St.3d 416, 6 OBR 463, 453 N.E.2d 593, in which the court held that aggravated burglary and theft protected different societal interests. The court explained that in *Mitchell*, it "acknowledged that the theft statute seeks to prohibit the nonconsensual taking of property by any means, while the focus of the aggravated-burglary statute seeks to minimize the risk of harm to persons." Id. at ¶ 36. Thus, *Mitchell* held that because the statutes protect different societal interests, "the General Assembly intended to distinguish the offenses of aggravated burglary and theft and permit separate punishments for their commission." *Brown* at ¶ 36. *Brown* ultimately concluded that R.C. 2903.12(A)(1) aggravated assault and R.C. 2903.12(A)(2) aggravated assault are allied offenses of similar import and noted that the "subdivisions set forth two different forms of the same offense, in each of which the legislature manifested its intent to serve the same interest—preventing physical harm to persons." *Brown* at ¶ 39.

{¶ 14} In *Cabrales*, the court compared the elements of possession of drugs and trafficking and drugs and held that they are allied offenses of similar import. *Cabrales* at ¶ 30. The court explained:

> To be guilty of possession under R.C. 2925.11(A), the offender must "knowingly obtain, possess, or use a controlled substance." To be guilty of trafficking under R.C. 2925.03(A)(2), the offender must knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, knowing, or having reason to know, that the substance is intended for sale. In order to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc., the offender must "hav[e] control over" it. R.C. 2925.01(K) (defining "possession"). Thus, trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import because commission of the first offense necessarily results in commission of the second.

*Cabrales* at ¶ 31.

{¶ 15} In *State v. Minifee*, Cuyahoga App. No. 91017, 2009-Ohio-3089, 2009 WL 1819493, at ¶ 88–89, the court summarized the current state of the law regarding allied offenses of similar import as follows:

> In sum, after reviewing the whirlwind of *Cabrales*, *Brown*, and *Winn*, we find that under the first step, court must still "compare the elements in the abstract," but that the elements do not have to "exactly align" (as courts had previously interpreted [*State v.*] *Rance*[, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999)] to mean). If when comparing the elements, "the offenses are so similar

that the commission of one will necessarily result in the commission of the other [but not both, meaning the opposite does not have to be true], then the offenses are allied offenses of similar import." That means that if either crime "is wholly subsumed within the other," then the offenses are of similar import. *Cabrales*, at ¶ 39 (Fain, J., concurring).

It may be helpful to state the test another way. When comparing the offenses, if either offense could not be committed without also committing the other * * * then the offenses are allied. But if both offenses require "proof of an element that the other does not," meaning both offenses can be committed without committing the other * * * then the offenses are not allied.

{¶ 16} With the foregoing principles in mind, we turn to appellant's argument that several of the offenses of which the trial court convicted him constitute allied offenses of similar import.

B

PLAIN ERROR

{¶ 17} Before we consider the merits of appellant's allied-offense assignments of error, we first address the prosecution's argument that appellant's failure to object at the sentencing hearing failed to preserve the alleged errors for appellate review. If a defendant fails to object to multiple convictions for allied offenses of similar import, we may nonetheless recognize the error if it constitutes plain error. It is well settled that we may notice plain errors or defects affecting substantial rights, despite an appellant's failure to bring them to the attention of the trial court. Crim.R. 52(B). Plain error exists when the error is plain or obvious and when the error "affect[s] 'substantial rights.'" The error affects substantial rights when " 'but for the error, the outcome of the trial [proceeding] clearly would have been otherwise.'" *State v. Litreal*, 170 Ohio App.3d 670, 2006-Ohio-5416, 868 N.E.2d 1018, at ¶ 11, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. We take notice of plain error with the utmost of caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, at ¶ 78; *State v. Patterson*, Washington App. No. 05CA16, 2006-Ohio-1902, 2006 WL 998205, at ¶ 13. A reviewing court should consider noticing plain error only if the error " ' "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." ' " *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240, quoting *United States v. Olano* (1993), 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508, quoting in turn *United States v. Atkinson* (1936), 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555. We have previously recognized that plain error exists when a defendant is convicted of multiple offenses that constitute

allied offenses of similar import. See *State v. Shaw*, Scioto App. No. 07CA3190, 2008-Ohio-5910, 2008 WL 4899277, at ¶ 16.

{¶ 18} Furthermore, we observe that trial counsel objected to the imposition of multiple punishments for the offenses alleged in counts three though six and seven through nine after the prosecution presented its case, before the jury retired, and at the sentencing hearing. Consequently, appellant properly preserved these issues for appellate review. Appellant, however, did not object to the imposition of multiple punishment regarding counts one and two—the illegal possession of chemicals for the manufacture of methamphetamine and the illegal manufacture of drugs. We therefore review this argument under a plain-error analysis.

C

## ILLEGAL ASSEMBLY OR POSSESSION OF CHEMICALS FOR THE MANUFACTURE OF DRUGS AND ILLEGAL MANUFACTURE OF DRUGS

{¶ 19} In his first assignment of error, appellant asserts that the trial court should have merged his convictions for the illegal assembly or possession of chemicals for the manufacture of drugs and the illegal manufacture of drugs. Pursuant to *Cabrales*, we begin our analysis by comparing the elements in the abstract. R.C. 2925.04(A) prohibits the illegal manufacture of drugs and states: "No person shall knowingly cultivate marijuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.041(A) prohibits the illegal assembly or possession of chemicals for the manufacture of drugs and states: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

{¶ 20} Thus, the elements we must compare are (1) "knowingly," (2) "manufacture or otherwise engage in any part of the production," and (3) "controlled substance" (illegal manufacture), with (1) "knowingly," (2) "assemble or possess," (3) "chemicals that may be used to manufacture a controlled substance," and (4) "intent to manufacture a controlled substance" (illegal assembly/possession).

{¶ 21} A comparison of the elements in the abstract reveals that the elements are not so similar that the commission of one crime necessarily results in the commission of the other. A defendant can knowingly assemble or possess chemicals that may be used to manufacture a controlled substance without also knowingly manufacturing or otherwise engaging in any part of the production of a controlled substance. A defendant may assemble or may possess the ingredi-

ents to create a controlled substance without also taking the steps necessary to manufacture or engage in any part of the production of the controlled substance. See *State v. Seljan*, Cuyahoga App. No. 89845, 2009-Ohio-340, 2009 WL 205355 (stating that R.C. 2925.04 and 2925.041 are not allied offenses of similar import because R.C. 2925.04 "prohibits many activities that could constitute otherwise engaging in any part of the production of a controlled substance"); see also *State v. Perry*, 157 Ohio App.3d 443, 2004-Ohio-3020, 811 N.E.2d 614. A defendant could manufacture or otherwise engage in the manufacture of a controlled substance without also assembling or possessing a chemical used to make that substance.

{¶ 22} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

## D

## HAVING A WEAPON WHILE UNDER DISABILITY

{¶ 23} In his second assignment of error, appellant contends that the trial court should have merged all of the convictions of having a weapon while under disability (counts three, four, five, and six). The prosecution argues that count three, which involved the possession of a rifle, stands apart from counts four, five, and six, which involved the possession of explosive materials found together in a single location, i.e., a green Army ammunition box. Moreover, we note that the prosecution conceded at sentencing that counts four, five, and six should merge.

{¶ 24} We find our prior decision in *State v. Pitts* (Nov. 6, 2000), Scioto App. No. 99CA2675, 2000 WL 1678020, dispositive of this assignment of error. In *Pitts*, the prosecution charged the defendant with eight counts of having a weapon while under a disability. Law-enforcement officers recovered seven handguns from a pink purse and discovered a rifle in a different location. On appeal, we held that the seven counts relating to the seven handguns merged but that the count involving the rifle did not:

> The statute [forbidding having a weapon while under disability] does not address whether simultaneous, undifferentiated possession of multiple firearms is one offense or multiple offenses. See *State v. Woods* (1982), 8 Ohio App.3d 56, 60[, 8 OBR 87, 455 N.E.2d 1289] (making same observation with similarly-worded R.C. 2923.12, the concealed-weapons statute). Moreover, * * * the statutory language does not evince an intent to make each weapon the relevant unit of prosecution rather than the transaction of having the weapons. See *State v. Hipple* (May 21, 1999), Miami App. No. 98CA49[, 1999 WL 317292], unreported. In other words, a defendant's simultaneous possession of several weapons in one location at one time is a continuous, indivisible act. *Woods,*

supra, 8 Ohio App.3d at 60[, 8 OBR 87, 455 N.E.2d 1289]; accord *State v. Foltz* (June 28, 1999), Fairfield App. No. 98CA58[, 1999 WL 547592]. Thus, the simultaneous, undifferentiated possession of weapons by a person under a disability constitutes only one offense and not separate offenses for each weapon. *State v. Thompson* (1988), 46 Ohio App.3d 157, 159[, 546 N.E.2d 441]; cf. *State v. Jones* (May 15, 1991), Washington App. No. 89CA23[, 1991 WL 87306], unreported (following *Woods* and *Thompson* to hold that simultaneous possession of multiple firearms in motor vehicle was one offense under R.C. 2923.16[B]).

In this case, the appellant was convicted for eight separate counts for eight different weapons. The record shows that seven of these weapons (all of them handguns) were found in the same location, viz. inside a "pink purse" in an outbuilding directly behind the appellant's dwelling house. The appellant's possession of these handguns was simultaneous and undifferentiated and could therefore constitute only one offense. Absent some evidence that she acquired or placed them there at different times, the trial court should have sentenced the appellant on only one violation of R.C. 2923.13 for the seven handguns alleged in counts seven through 13 of the indictment.

The trial court did not err, however, in sentencing the appellant for illegally possessing the .22 caliber rifle (count five of the indictment). The evidence established that officers found the rifle in a different outbuilding from the other guns. Because the weapon was in a different location, we cannot characterize the appellant's possession as being "simultaneous and undifferentiated." Having the rifle while under a disability was therefore a separate offense from having the handguns. See *State v. Carna* (Aug. 19, 1992), Washington App. No. 91CA32[, 1992 WL 208963], unreported; *State v. Herda* (Apr. 21, 1997), Licking App. No. 96CA00127, unreported.

(Footnote omitted.)

{¶ 25} We find the facts in the case at bar similar to those in *Pitts*. Law enforcement officers recovered three items (a detonation cord, blasting caps, and ammonium nitrate) from a single location (a green Army ammunition box). The fourth item (a rifle) was located in a different location and was not in the green Army ammunition box. Therefore, appellant's possession of the rifle was not simultaneous and undifferentiated from his possession of the contents in the ammunition box. Consequently, appellant committed the offense of having a weapon while under disability relating to the rifle separately from the offense of having a weapon while under a disability relating to the weapons in the ammunition box.

{¶ 26} Appellant did not, however, commit the three other weapons offenses separately. The weapons that formed the basis for these three other

offenses (counts four, five, and six) were all recovered from the same location, i.e., an ammunition box. Appellant's possession of these three items was simultaneous and undifferentiated. Consequently, the trial court should have merged these offenses. Because the trial court sentenced appellant on each of these three offenses, we must reverse the trial court's judgment on counts four, five, and six and remand for resentencing.

{¶ 27} Accordingly, we overrule appellant's second assignment of error as it relates to the trial court's failure to merge counts three with counts four, five, and six. We sustain his second assignment of error to the extent he argues that the trial court should have merged counts four, five, and six.

D

## HAVING A WEAPON WHILE UNDER DISABILITY AND UNLAWFUL POSSESSION OF DANGEROUS ORDNANCE

{¶ 28} In his third assignment of error, appellant argues that the trial court should have merged three of the offenses of having a weapon under disability (counts four, five, and six) with the three offenses of unlawful possession of dangerous ordnance (counts seven, eight, and nine). He asserts that he committed the offenses with the same animus.

{¶ 29} The prosecution concedes that counts four, five, and six constitute allied offenses of similar import and that counts seven, eight, and nine constitute allied offenses of similar import. The prosecution does not agree, however, that the two sets of offenses constitute allied offenses of similar import.

{¶ 30} We begin our analysis by comparing the elements of the offenses in the abstract. R.C. 2923.13(A)(3) sets forth the offense of having a weapon under disability as charged in the case sub judice and states:

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

* * *

(3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

R.C. 2923.17(A) sets forth the offense of unlawful possession of dangerous ordnance as charged in the case at bar and states: "(A) No person shall knowingly acquire, have, carry, or use any dangerous ordnance."

{¶ 31} In *State v. Hines* (1987), 39 Ohio App.3d 129, 529 N.E.2d 1286, the court held that the elements of having a weapon while under disability and the unlawful possession of dangerous ordnance do not correspond to such a degree that commission of one offense will result in commission of the other. The court stated:

Facts establishing possession of a dangerous ordnance will not establish having a weapon while under disability in the absence of proof of the additional element required for establishing having a weapon while under disability, i.e., evidence of a disability as defined by R.C. 2923.13(A)(1) through (5).

Facts establishing having a weapon while under disability will not necessarily establish unlawful possession of a dangerous ordnance because having a weapon while under disability can be established where any firearm or dangerous ordnance is involved, whereas unlawful possession of a dangerous ordnance is proved only by evidence of a dangerous ordnance. "Dangerous ordinance," as it pertains to firearms, is a subclass of "firearm."

See also *State v. Lewis* (Apr. 4, 1997), Greene App. No. 96CA12, 1997 WL 156596; *State v. Perkins* (Nov. 2, 1995), Cuyahoga App. No. 68580, 1995 WL 643792.

{¶ 32} We likewise conclude that having a weapon while under disability and the unlawful possession of dangerous ordnance do not constitute allied offenses of similar import. One who commits the crime of unlawful possession of dangerous ordnance does not also necessarily commit the crime of having a weapon while under a disability. A person can acquire, have, carry, or use any dangerous ordnance without also acquiring, having, carrying, or using any firearm or dangerous ordnance while under a disability.

{¶ 33} Furthermore, we believe that the two statutes protect different societal interests. See *Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149. The statute forbidding having a weapon while under disability applies to a defined set of persons whom the legislature deems deserves a specific punishment for possessing a weapon. The statute forbidding unlawful possession of dangerous ordnance applies to the public at large and prohibits anyone from possessing "any dangerous ordnance."

{¶ 34} Consequently, the trial court did not err by failing to merge the weapons offenses with the dangerous-ordnance offenses.

{¶ 35} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third assignment of error.

E

## UNLAWFUL POSSESSION OF DANGEROUS ORDNANCE

{¶ 36} In his fourth assignment of error, appellant asserts that the trial court erred by failing to merge the three offenses of unlawful possession of dangerous ordnance. The prosecution concedes the correctness of appellant's fourth assignment of error, and it is hereby sustained.

{¶ 37} Accordingly, based upon the foregoing reasons, we sustain appellant's fourth assignment of error, and we reverse the trial court's judgment of conviction and sentence for counts seven, eight, and nine and hereby remand the matter consistent with this opinion.

II

{¶ 38} In his fifth assignment of error, appellant asserts that trial counsel failed to provide effective assistance of counsel. Appellant argues that trial counsel's failure to object to the imposition of multiple punishments for allied offenses of similar import constituted ineffective assistance of counsel.

{¶ 39} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel. See *McMann v. Richardson* (1970), 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763; *State v. Stout*, Gallia App. No. 07CA5, 2008-Ohio-1366, 2008 WL 757521. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; see also *State v. Issa* (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904; *State v. Goff* (1998), 82 Ohio St.3d 123, 139, 694 N.E.2d 916. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Citations omitted.) *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, Scioto App. No. 06CA3116, 2008-Ohio-968, 2008 WL 613116, at ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. See *State v. Madrigal* (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶ 40} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* Washington App. No. 07CA11, 2008-Ohio-482, 2008 WL 343328, at ¶ 10, citing *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 17 OBR 219, 477 N.E.2d 1128. Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. See *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, at ¶ 62; *State v. Hamblin* (1988), 37 Ohio St.3d 153, 156, 524 N.E.2d 476.

{¶ 41} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. S*tate v. White* (1998), 82 Ohio St.3d 16, 23, 693 N.E.2d 772; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated. See *State v. Clark,* Pike App. No. 02CA684, 2003-Ohio-1707, 2003 WL 1756101, at ¶ 22; *State v. Tucker* (Apr. 2, 2002), Ross App. No. 01CA2592, 2002 WL 507529; *State v. Kuntz* (Feb. 26, 1992), Ross App. No. 1691, 1992 WL 42774.

{¶ 42} In the case at bar, we determined in our discussion of appellant's first assignment of error that counts one and two are not allied offenses of similar import. Therefore, trial counsel's decision not to object to multiple punishments for these two offenses was reasonable. Furthermore, we determined that count three and counts four, five, and six do not constitute allied offenses of similar import. Therefore, trial counsel's decision not to object to multiple punishments for these offenses was reasonable. Additionally, we point out that trial counsel objected before sentencing that counts three through six should merge and that counts seven through nine should merge. Counsel's performance, therefore, was not deficient. Additionally, even if we assume for purposes of argument that counsel's performance was, in fact, deficient, we have reversed the trial court's judgment sentencing appellant for counts four through six and for counts seven through nine.

{¶ 43} Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error. Therefore, we hereby affirm in part and reverse in

part the trial court's judgment and remand for further proceedings consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

KLINE, J., concurs.

HARSHA, J., concurs separately.

HARSHA, Judge, concurring separately.

{¶ 44} Logic and common sense tell us that possessing the chemicals for the manufacture of drugs and using those same chemicals to actually manufacture them are "so similar that the commission of one offense will necessarily result in the commission of the other." But, alas, we are duty-bound to apply the law rather than either of those two processes. Thus, we will continue to reach absurd results like this one until we can use the actual facts of the case instead of comparing elements in the abstract to determine whether two offenses are allied and of similar import. See, *State v. Williams*, 124 Ohio St.3d 381, 2010-Ohio-147, 922 N.E.2d 937, ¶ 35 (Lanzinger, J., dissenting).