[Cite as *State v. Mitchell*, 2014-Ohio-5070.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee                 :          C.A. CASE NO.    25976

v.                                     :          T.C. NO.    12CR1055/1

LAYRUE MITCHELL JR.                    :          (Criminal appeal from
                                                  Common Pleas Court)

    Defendant-Appellant             :

                                       :

. . . . . . . . . .

## **O P I N I O N**

Rendered on the _____14th_____ day of _____November_____, 2014.

. . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

WILLIAM F. OSWALL JR., Atty. Reg. No. 0080597, 810 Sycamore Street, Fifth Floor, Cincinnati, Ohio 45202
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Defendant-appellant Layrue Mitchell, Jr. appeals his conviction and sentence for one count of possession of heroin, one count of misdemeanor possession of drugs, one count of possession of criminal tools, and three counts of having weapons while under disability. Mitchell filed a timely notice of appeal with this Court on October 28, 2013.

**{¶ 2}** In late 2011, Detective Gregory Stout of the Kettering Police Department in Montgomery County, Ohio, received information from patrol police officers who suspected that illegal drug sales were being conducted out of a residence located at 1515 Moler Avenue. Det. Stout contacted a confidential informant (CI) who informed him that Mitchell lived at the residence with his girlfriend, Kristi Curtis. After investigating further and verifying that Mitchell and Curtis did in fact live at the residence, Det. Stout arranged controlled buys on two separate occasions utilizing the CI. On both occasions, the CI purchased varying amounts of heroin from Mitchell which were then turned over to Det. Stout.

**{¶ 3}** As a result of the investigation and controlled buys, Det. Stout obtained a search warrant for the person and residence of Mitchell, and for the white 2000 Chevy Blazer that he drove.[1] The warrant was executed on January 6, 2012. Accompanied by other officers, Det. Stout took Mitchell into custody behind a restaurant named Jimmy's Italian located at 3002 Woodman Drive in Dayton, Ohio, where Curtis worked. The search

---

[1]Det. Stout testified that the Chevy Blazer driven by Mitchell was registered to Virginia Ruth Mitchell.

of the Chevy Blazer failed to turn up any incriminating evidence. Upon searching Mitchell, however, police found approximately $2,299.00 in cash, a cell phone, and keys to the residence at 1515 Moler Avenue. During the subsequent search of the residence, the police located illegal drugs, three guns, and various drug paraphernalia. Specifically, in the master bedroom closet, the police found a loaded 9mm handgun on a shelf placed next to a small safe. Beneath the safe, the police found a .22 long rifle and a Mossberg 12 gauge shotgun leaning on the wall. Once the police were able to force open the safe, they discovered 1.81 grams of a tan powdery substance that was later identified as heroin. A single orange pill was also found in the safe that was later identified as buprenorphine, a Schedule III controlled substance for which Mitchell did not have a prescription. Inside a dresser located on the opposite side of the room, the police found a digital scale covered with heroin and cocaine residue. After obtaining a search warrant for the cell phone seized from Mitchell, its contents were examined at the Miami Valley Regional Computer Forensics Lab. Two photographs taken from the cell phone depicted Mitchell standing in the master bedroom of 1515 Moler Avenue brandishing the 9mm handgun found in the closet next to the safe.

{¶ 4} Upon being interviewed by police, Mitchell acknowledged that he resided at 1515 Moler Avenue with Curtis. When informed that he might face potential drug trafficking charges, Mitchell stated that he had been using three grams of heroin daily for the last six to eight months.

{¶ 5} On June 13, 2012, Mitchell was indicted for one count one count of trafficking in heroin, one count of possession of heroin, one count of possession of criminal tools, one count of misdemeanor possession of drugs, and three counts of having weapons

while under disability. Mitchell pled not guilty, and subsequently filed a motion to suppress evidence, based on a claim that the affidavit supporting the warrant contained material misstatements and omissions, and violated *Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The trial court granted Mitchell's motion to suppress the evidence obtained from the search of his residence, and the State appealed the decision to this Court.

{¶ 6} In *State v. Mitchell*, 2d Dist. Montgomery No. 25402, 2013-Ohio-622 (hereinafter "*Mitchell I*"), we concluded that the trial court erred by granting Mitchell's motion to suppress. Specifically, we found that the affidavit provided a substantial basis upon which the issuing judge could find a fair probability that a crime had been committed and that evidence would be found within the place to be searched. *Id*. at ¶ 2. We reversed the decision granting the suppression motion and remanded the case to the trial court. *Id*.

{¶ 7} The case proceeded to trial on September 5, 2013. After the close of the State's case, the trial court sustained Mitchell's Crim. R. 29 motion for acquittal with respect to the first count in the indictment for trafficking in heroin. Mitchell did not call any witnesses on his behalf. The jury found Mitchell guilty of the remaining six charges. At his sentencing hearing on September 25, 2013, the trial court imposed an aggregate sentence of fifty months in prison.

{¶ 8} It is from this judgment that Mitchell now appeals.

{¶ 9} Mitchell's first assignment of error is as follows:

{¶ 10} "THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE TO AMEND COUNT 2 OF THE INDICTMENT."

{¶ 11}  In his first assignment, Mitchell contends that the trial court erred when it permitted the State to amend Count II of the indictment prior to trial.  Originally, Mitchell was charged in Count II with possession of heroin in an amount less than one gram, a felony of the fifth degree.   Before trial, the State moved to amend the indictment to reflect that the amount of heroin Mitchell was alleged to possess was "more than one gram but less than five grams."   In its decision granting the motion, the trial court specifically found that "the proposed amendment does not change either the name or identity of the crime."   The trial court also acknowledged that as a result of the amendment, the degree of the possession charge changed from a felony of the fifth degree to a felony of the fourth degree.   We note that Mitchell did not file a memorandum in opposition to the State's motion, nor did he object to the amendment of the indictment at trial.

{¶ 12}   Crim. R. 7(D) provides in part:

> The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.

{¶ 13}  Because amendment is allowed under Crim. R. 7(D) in the court's discretion, our review is for abuse of discretion. *State v. Madding*, 2d Dist. Montgomery No. 24412, 2011-Ohio-3865, ¶ 11.   "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of

discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 14} A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 15} Mitchell did not oppose or object to the amendment of the indictment, so all but plain error has been forfeited. *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990). For plain error to exist, the defect in the trial proceedings must be obvious and must have affected the outcome of the trial. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. "Notice of plain error 'is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 16} Mitchell asserts, and the State concedes, that the trial court erred in permitting an amendment to the indictment. To support this argument, Mitchell cites *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, 903 N.E.2d 609. In *Davis*, the trial court amended an aggravated drug trafficking charge, finding that the amount of oxycontin found in the defendant's possession was more than five times the bulk amount. *Id*. at ¶ 2. This amendment changed the degree of the charged offense from a felony of the fourth degree, to

a felony of the second degree. *Id*. at ¶ 3. While the Court in *Davis* recognized that an amendment is proper if it does not change the penalty or the degree of the offense, it held that an amendment that does alter the penalty or degree implicitly alters the identity of the offense and is not permitted under Crim. R. 7(D). *Id*. at ¶ 13.

{¶ 17} While the State concedes that it was error for the trial court to permit the amendment of the indictment from a felony of the fifth degree to a felony of the fourth degree, it argues that the error was harmless because the judgment entry of conviction reflects that Mitchell was convicted of possession of heroin, a felony of the *fifth* degree, as stated in the original indictment. Moreover, the State points out that Mitchell was sentenced to ten months in prison on the heroin possession charge, which is within the sentencing range for a fifth degree felony conviction.

{¶ 18} Significantly, however, the verdict forms clearly state that the jury found Mitchell guilty of possession of heroin in an amount more than one gram but less than five grams, a felony of the *fourth* degree. Thus, the verdict form is inconsistent with the judgment entry of conviction as to the level of the offense (i.e., the quantity of drugs). Moreover, the fact that Mitchell received a sentence that was within the applicable statutory range for a fifth degree felony is irrelevant. Because the trial court permitted the State to improperly amend Count II of the indictment, Mitchell was convicted of an offense "essentially different from that found by the grand jury." *Davis*, at ¶ 12, citing *State v. Headley*, 6 Ohio St.3d 475, 479, 453 N.E.2d 716 (1983).

{¶ 19} The amendment ultimately changed the offense of possession of heroin from a fifth degree felony to a fourth degree felony. The increase in severity of the offense

changes the identity of the offense and is expressly forbidden by Crim. R. 7(D). *Davis*, at ¶ 25. Thus, the trial court plainly erred by permitting the State to amend the indictment. An amendment which changes the name or identity of the offense alleged, being expressly forbidden by Crim. R. 7(D), is reversible error regardless of whether a defendant can demonstrate prejudice as a result of the amendment. *State v. Gilleland*, 2d Dist. Champaign No. 2004 CA 1, 2005-Ohio-659, ¶ 15.

{¶ 20} Mitchell's first assignment of error is sustained.

{¶ 21} Mitchell's second assignment of error is as follows:

{¶ 22} "THE TRIAL COURT ERRED BY FAILING TO MERGE COUNTS FIVE THROUGH SEVEN."

{¶ 23} In his second assignment, Mitchell argues that the trial court erred when it failed to merge his convictions in Counts V, VI, and VII for having weapons while under disability.[2] Specifically, Mitchell asserts that the convictions for having weapons while under disability should have merged because all three firearms that were found during the search of his residence were located in the same place. We note that Mitchell failed to object to the trial court's failure to merge the offenses, so all but plain error has been forfeited. *Lott*, 51 Ohio St.3d 160, 167.

{¶ 24} R.C. 2941.25, concerning allied offenses of similar import, provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or

---

[2]In its merit brief, the State concedes that the trial court erred when it failed to merge all three of Mitchell's convictions for having weapons while under disability.

information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 25} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court announced a new test for determining when offenses are allied offenses of similar import. Pursuant to *Johnson*, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Id*. at ¶ 44. The Court further noted that:

In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." * * *

If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R .C. 2941.25(B), the offenses will not merge.

(Citations and quotations omitted.) *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 48-51.

{¶ 26} In support of his argument that the offenses should have been merged by the trial court, Mitchell directs our attention to *State v. King*, 2d Dist. Clark No. 2012-CA-25, 2012-CA-26, 2013-Ohio-2021, wherein we stated the following:

R.C. 2923.13 prohibits individuals under certain legal disabilities from acquiring, having, carrying or using any firearm or dangerous ordnance. Several appellate districts have commented that the legislature's use of the word "any" created an ambiguity as to whether each individual weapon was the "unit of prosecution," rather than the "transaction of having the weapons." *E.g.*, *State v. Pitts*, 4th Dist. Scioto No. 99 CA 2675, 2000 WL 1678020, *13 (Nov. 6, 2000); *see also State v. English*, 1st Dist. Hamilton No. C-080872, 2010-Ohio-1759, ¶ 43. These courts have held that "the simultaneous, undifferentiated possession of weapons by a person under a disability constitutes *only one offense* and not separate offenses for each weapon." (Emphasis in original.) *Pitts* at *13; *see also*, *e.g.*, *State v. Creech*, 188 Ohio

App.3d 513, 2010-Ohio-2553, 936 N.E.2d 79, ¶ 24 (4th Dist.); *English* at

¶ 43; *State v. Long*, 9th Dist. Summit No. 26441, 2013-Ohio-251.

*Id.* at ¶ 32.

**{¶ 27}** In *King*, the defendant was apprehended after he crashed his vehicle into a telephone pole and attempted to flee from the scene. *Id.* at ¶ 38. After the defendant's apprehension, the police located a gun in his vehicle. *Id.* The defendant was taken to a hospital and to the police department before he was moved to the jail, where he produced a second gun from his jacket. *Id.* The record in *King* did not establish whether the defendant initially acquired the guns at different times. *Id.* at ¶ 38. However, from the facts in the record, it is apparent that the defendant had both guns in his possession while he fled from officers in his vehicle. *Id.* Thus, we found that while the defendant was fleeing in his car, he had simultaneous, undifferentiated possession of both weapons, and the trial court erred when it failed to merge the defednant's two counts of having weapons while under disability as allied offenses of similar import. *Id.* at 41.

**{¶ 28}** In the instant case, all three guns were located together in the closet in Mitchell's master bedroom. No evidence was presented at trial that established when Mitchell acquired any of the three weapons. Accordingly, we find that Mitchell had simultaneous, undifferentiated possession of all three weapons, and the trial court erred when it failed to merge the three counts of having weapons while under disability as allied offenses of similar import.

**{¶ 29}** Mitchell's second assignment of error is sustained.

**{¶ 30}** Mitchell's third assignment of error is as follows:

{¶ 31} "THE TRIAL COURT ERRED IN ENTERING A JUDGMENT OF GUILTY OF POSSESSING CRIMINAL TOOLS AND FOR SENTENCING DEFENDANT-APPELLANT FOR THAT OFFENSE."

{¶ 32} In his third assignment, Mitchell argues that the digital scale and Sentry box safe that he was convicted of possessing are actually "drug paraphernalia" rather than criminal tools. Therefore, Mitchell asserts that he should have been convicted of possession of drug paraphernalia, in violation of R.C. 2925.14, a misdemeanor of the fourth degree, instead of possession of criminal tools, in violation of R.C. 2923.24, a fifth degree felony.[3] We note that Mitchell failed to object or otherwise raise this issue before the trial court. Therefore, we review this assignment under a plain error analysis.

{¶ 33} In support of his contention, Mitchell cites to our recent holding in *State v. Griffin*, 2d Dist. Montgomery No. 24001, 2013-Ohio-2230; reversed on other grounds, *State v. Griffin*, _____ Ohio St.3d _____, Slip Opinion No. 2014-Ohio-4767. In *Griffin*, we held that the trial court erred in sentencing the defendant for possession of items that are properly classified as drug paraphernalia rather than criminal tools. *Id*. at ¶ 3.

{¶ 34} R.C. 2925.14 (C)(1) prohibits any person from knowingly using or possessing with purpose to use, drug paraphernalia. Under R.C. 2925.14(A) "drug paraphernalia" is defined as:

> [A]ny equipment, product, or material of any kind that is used by the
>
> offender, intended by the offender for use, or designed for use, in
>
> propagating, cultivating, growing, harvesting, manufacturing, compounding,

---

[3]The State concedes error in regards to this assignment.

converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body, a controlled substance in violation of this chapter.

**{¶ 35}** R.C. 2925.14(A)(1)-(13) also provides a non-exclusive list of various equipment, products or materials that could be classified as drug paraphernalia. This list includes items like kits for cultivating controlled substances, scales or balances for weighing or measuring controlled substances, testing equipment for identifying the strength of controlled substances, hypodermic syringes, separation gins for removing twigs and seeds from marijuana, and so forth. In addition, the list includes these items:

> (6) A scale or balance for weighing or measuring a controlled substance.
>
> * * *
>
> (11) A container or device for storing or concealing a controlled substance.

**{¶ 36}** In *Griffin,* we found that it is possible to commit both offenses (possession of criminal tools and possession of drug paraphernalia) with the same conduct.

> R.C. 2923.24 is a very broad statute, and covers the possession of "any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2925.14 is more specific, but it also covers possession, with intent to use drug paraphernalia. As we pointed out in *Susser II*, this is a "subcategory" of "criminal tool." *Susser II*, 2d Dist. Montgomery No.

12745, 1992 WL 41834, *4 (March 2, 1992). The offenses in this case were also committed by the same conduct, being a single act, and were committed with a single state of mind. All that occurred here, to form the offense, was simple possession of a forbidden object.

*Id.* at ¶ 64.

**{¶ 37}** In *Griffin*, the defendant used a razor and plate (which contained drug residue) to prepare and cut the drugs, and the gel capsules and baggies were used for packaging and storing the drugs. *Id.* at ¶ 69. Under the definitions provided in R.C. 2925.14(A), we found that the items in question were drug paraphernalia, rather than criminal tools.

**{¶ 38}** R.C. 2925.14(C)(1) prohibits any person from knowingly using or possessing with purpose to use, drug paraphernalia. In the instant case, "[a] scale or balance for weighing or measuring a controlled substance" is specifically enumerated as a type of equipment used as "drug paraphernalia." R.C. 2925.14(A)(6). Therefore, the digital scale (which contained drug residue) located in Mitchell's dresser clearly qualifies as "drug paraphernalia" as contemplated under R.C. 2925.14. Additionally, the small Sentry box safe Mitchell used to store and conceal his heroin also falls within the definition of "drug paraphernalia" as defined under R.C. 2925.14(A)(11). Accordingly, the instant case falls squarely under our holding in *Griffin*, and Mitchell should have been sentenced for possession of drug paraphernalia, a violation of R.C. 2925.14(C)(1), rather than for possession of criminal tools.

**{¶ 39}** Mitchell's third assignment of error is sustained.

{¶ 40} Mitchell's fourth assignment of error is as follows:

{¶ 41} "DEFENDANT-APPELLANT'S CONVICTIONS MUST BE REVERSED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 42} In his fourth assignment, Mitchell argues that he received ineffective assistance when his trial counsel failed to object to Det. Stout's testimony relating to the underlying reasons for the issuance of the search warrant. Mitchell also asserts that his counsel was deficient for failing to object to the admission of the search warrant and its supporting affidavit. Specifically, Mitchell argues that portions of Det. Stout's testimony and the search warrant and affidavit constituted inadmissible hearsay that should have been excluded.

{¶ 43} As this Court noted in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), "the proper standard for attorney performance is that of reasonably effective assistance. * * *." *Id*., 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. * * *." *Id.*, 691. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. * * *." *Id*., 693. The *Strickland* Court further noted, "[o]n the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id*. "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id*., 694. Finally, the Court in *Strickland* determined that to establish ineffective assistance, "[t]he

defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

**{¶ 44}** We note that the State elicited the following testimony from Det. Stout which clearly constituted inadmissible hearsay statements (which the State concedes): 1) that Det. Stout had been advised by patrol officers that there was potential drug activity at 1515 Moler Avenue; 2) that he had spoken with a CI who provided him with information regarding Mitchell; 3) that the CI told him that Mitchell and Curtis recently had a domestic dispute at the address in question; and 4) that two controlled drug transactions occurred between Mitchell and the CI at 1515 Moler Avenue. It is clear from the record that Det. Stout was not present when the controlled drug buys occurred. Det. Stout merely related back in his own testimony what the CI told him regarding the drug transactions.

**{¶ 45}** All of the aforementioned testimony was clearly inadmissible hearsay which should have been excluded. Furthermore, the testimony was substantially more prejudicial than probative under Evid. R. 403. Upon review, we cannot deduce any strategic reason for trial counsel not to have objected to the hearsay testimony of Det. Stout. Additionally, counsel failed to object to the admission into evidence of the search warrant and supporting affidavit, which relied heavily on the information provided by the CI to Det. Stout. This allowed the jury a second opportunity to review inadmissible and prejudicial hearsay evidence.

**{¶ 46}** Trial counsel's failure to object to the admission of Det. Stout's testimony regarding the pre-warrant controlled buys and the admission of the search warrant clearly fell

below an objective standard of reasonableness. On the record before us, however, we conclude that the remaining admissible evidence adduced by the State supports Mitchell's conviction on all counts beyond a reasonable doubt. Mitchell admitted to Det. Stout that he lived at 1515 Moler Avenue with his girlfriend, Curtis. Mitchell had keys to the residence and was observed by Det. Stout arriving at and leaving the residence shortly before the search warrant was executed. The small Sentry box safe wherein the heroin powder and the buprenorphine pill were found contained several prescription bottles with Mitchell's name on them. The safe was found directly next to a 9mm handgun that Mitchell is seen brandishing in a photograph that was retrieved from his cell phone. It is was also apparent that the photograph of Mitchell holding the handgun was taken in the master bedroom of the residence at 1515 Moler Avenue. The shotgun and rifle were located directly beneath the small box safe in the closet in the bedroom. Furthermore, Mitchell admitted to Det. Stout in an interview that he had been using three grams of heroin a day for several months.

{¶ 47} Irrespective of the inadmissible hearsay testimony to which defense counsel failed to object, the State adduced sufficient admissible testimony at trial to support Mitchell's conviction for the charged offenses. Simply put, Mitchell has failed to establish that but for counsel's deficient performance, the result of the trial would have been different.

{¶ 48} Mitchell's fourth assignment of error is overruled.

{¶ 49} Mitchell's fifth assignment of error is as follows:

{¶ 50} "DEFENDANT-APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 51} In his fifth assignment, Mitchell contends that his convictions are not

supported by the manifest weight of the evidence.

{¶ 52} "When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 53} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 54} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in

arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 55} We initially note that the jurors had the opportunity to hear and observe all of the witnesses, and they clearly believed the State's version of events, and we defer to their assessment of credibility. We also note that Mitchell did not call any witnesses during his case in chief, nor did he present any additional evidence. As we discussed in the preceding assignment, ample admissible evidence was adduced by the State which supports Mitchell's conviction on all counts beyond a reasonable doubt. The trial court did not lose its way simply because it chose to believe the testimony of the State's witnesses. Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against a conviction, or that a manifest miscarriage of justice has occurred.

{¶ 56} Mitchell's fifth assignment of error is overruled.

{¶ 57} Mitchell's sixth and final assignment of error is as follows:

{¶ 58} "THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES."

{¶ 59} In his final assignment, Mitchell argues that the trial court erred when it imposed consecutive sentences. Specifically, Mitchell asserts that the trial court did not make the requisite findings pursuant to R.C. 2929.14(C)(4) to support the imposition of consecutive sentences. For its part, the State concedes the alleged error and acknowledges that a remand is necessary. We agree.

{¶ 60} Before imposing the partially consecutive sentences, the trial court was required to find: (1) "consecutive service is necessary to protect the public from future crime

or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 61} The trial court did not make any of the foregoing findings. (Tr. Vol. II at 454-458). Accordingly, the matter is remanded for the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to enter the necessary findings on the record.

{¶ 62} Mitchell's sixth and final assignment of error is sustained.

{¶ 63} Mitchell's first, second, third, and sixth assignments of error having been sustained, the judgment of the trial court is reversed with respect to those assignments, and

this matter is remanded for proceedings consistent with this opinion. The trial court's judgment is affirmed in all other respects.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.


Copies mailed to:

Andrew T. French
William F. Oswall Jr.
Hon. Barbara P. Gorman