[Cite as *State v. Anderson*, 2023-Ohio-3335.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRIAN L. ANDERSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MO 0001**

---

Application to Reopen

**BEFORE:**
Carol Ann Robb, David A. D'Apolito, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Denied.

---

*Atty. James L. Peters*, Monroe County Prosecutor, Monroe County Prosecutor's Office, 101 N. Main Street, Room 15, Woodsfield, Ohio 43793 for Plaintiff-Appellee and

*Brian L. Anderson, pro se,* Noble Correctional Institution, 15708 McConnellsville Road, Caldwell, Ohio 43724.

Dated: September 14, 2023

**PER CURIAM.**

**{¶1}** Defendant-Appellant Brian L. Anderson has filed an application to reopen his direct criminal appeal under App.R. 26(B). For the following reasons, the application for reopening is denied.

**{¶2}** A criminal defendant may apply for reopening of his direct appeal based on a claim of ineffective assistance of appellate counsel by raising an assignment of error or an argument in support of an assignment of error that previously was not considered on the merits (or that was considered on an incomplete record) because of appellate counsel's deficient representation. App.R. 26(B)(1),(2)(c). Pursuant to the rule, in order to warrant reopening for further briefing, the application must demonstrate a "genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). If a genuine issue on ineffectiveness is established and further briefing is thus ordered, then the appellant must fully prove the ineffectiveness of appellate counsel by demonstrating deficient performance and prejudice. App.R. 26(B)(7)-(9).

**{¶3}** The traditional two-pronged test of deficiency and prejudice provides the underlying framework for assessing whether an application raises a genuine issue as to the ineffectiveness of appellate counsel under App.R. 26(B)(5). *State v. Tenace*, 109 Ohio St.3d 451, 2006-Ohio-2987, 849 N.E.2d 1, ¶ 5, applying *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Adams*, 146 Ohio St.3d 232, 2016-Ohio-3043, 54 N.E.3d 1227, ¶ 2. *See also* App.R. 26(B)(2)(d) (requiring a sworn statement on the basis for claiming deficient representation and how the deficiency prejudicially affected the outcome of the appeal). Deficient performance means a serious error in representation that falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688 (refrain from second-guessing the strategic decisions of counsel). In assessing the cited deficiency, a reviewing court heavily defers to counsel's judgment and strongly presumes the contested conduct was in the wide range of reasonable representation. *Tenace*, 109 Ohio St.3d 451 at ¶ 7. Prejudice exists if there is reasonable probability the result of the proceedings would have been different in the absence of the cited deficiency. *Tenace*, 109 Ohio St.3d 451 at ¶ 5. A reasonable

probability is more than "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 69; *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995) (counsel's lacking performance caused unreliable results or fundamental unfairness).

**{¶4}** More specifically to the first stage in App.R. 26(B), for the applicant "to justify reopening his appeal" for further briefing, it has been said he must meet "the burden of establishing there was a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." *Tenace*, 109 Ohio St.3d 451 at ¶ 6, quoting *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696 (1998). *See also State v. Were*, 120 Ohio St.3d 85, 2008-Ohio-5277, 896 N.E.2d 699, ¶ 11. A reopening applicant must keep in mind the following principle: "appellate counsel need not raise every possible issue in order to render constitutionally effective assistance." *Tenace*, 109 Ohio St.3d 451 at ¶ 7, citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) and *State v. Sanders*, 94 Ohio St.3d 150, 151-152, 761 N.E.2d 18 (2002).

**{¶5}** "An error-free, perfect trial does not exist, and is not guaranteed by the Constitution." *State v. Italiano*, 7th Dist. Mahoning No. 19 MA 0095, 2021-Ohio-1283, ¶ 35, citing *State v. Hill*, 75 Ohio St.3d 195, 212, 661 N.E.2d 1068 (1996). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues, to avoid diluting the force of stronger arguments." *Jones*, 463 U.S. at 751-752. In other words, constitutionally effective appellate counsel need not raise every argument a client wishes to present, and making choices on the omission of every potential or requested appellate argument is a strategic decision used to avoid diluting the strength of stronger arguments. *Id.* at 751-752.

**{¶6}** After a jury trial in the Monroe County Common Pleas Court, Appellant was convicted of the following offenses: aggravated drug possession, a second-degree felony due to 25.89 grams of methamphetamine (meth), which is more than five times the bulk amount; having a weapon while under disability, a third-degree felony (after a stipulation as to a pending indictment for felony drug possession); and unlawful possession of a dangerous ordnance for possessing a sawed-off shotgun, a fifth-degree felony. (1/21/22 J.E.). On appeal, Appellant raised multiple suppression issues and challenged the sufficiency and the weight of the evidence. We affirmed his convictions. *State v.*

*Anderson*, 7th Dist. Monroe No. 22 MO 0001, 2023-Ohio-945, *reconsideration denied*, 2023-Ohio-1695. Appellant filed the within timely application for reopening claiming appellate counsel was ineffective for failing to brief seven additional assignments of error.

{¶7} First, Appellant says appellate counsel should have argued he was entitled to merger of the two weapons offenses before sentencing under R.C. 2941.25. After sentencing him to 6 to 9 years on the drug charge, the trial court imposed concurrent sentences of 30 months for having a weapon while under disability and 11 months for unlawful possession of a dangerous ordnance (for a total sentence of 6 to 9 years). Appellant points out running sentences concurrently is not akin to merging offenses. *State v. Holcomb*, 7th Dist. Mahoning No. 19 MA 0083, 2021-Ohio-2352, ¶ 46-47, citing, *e.g.*, *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, 950 N.E.2d 512, ¶ 17. Appellant says he was entitled to merger of unlawful possession of a dangerous ordnance and having a weapon under disability because the conduct, animus, and import were the same, citing the dissenting opinion in *State v. Hines*, 39 Ohio App.3d 129, 529 N.E.2d 1286 (2d Dist.1987).

{¶8} Under his argument, the merger doctrine would equate his conduct with the conduct of a person under a weapons disability who possessed a standard (lawful) firearm, even though Appellant's unlawful firearm was separately criminalized. Appellant acknowledges there are cases concluding these offenses are not allied offenses of similar import. *See e.g., State v. Creech*, 188 Ohio App.3d 513, 2010-Ohio-2553, 936 N.E.2d 79, ¶ 31-34 (4th Dist.); *State v. Whitmore*, 8th Dist. Cuyahoga No. 56411 (Dec. 14, 1989), citing *Hines*, 39 Ohio App.3d at 130. *See also State v. Moore*, 110 Ohio App.3d 649, 654, 675 N.E.2d 13 (1st Dist.1996) (possession of a banned firearm is not of similar import to possession of a weapon while under a disability); *State v. Perkins*, 8th Dist. Cuyahoga No. 68580 (Nov. 2, 1995) (the essence of possessing an unregistered handgun is that the handgun has not been properly registered, but the distinct essence of having a weapon while under disability is the legal status of the possessor). Those cases applied prior interpretations of the statutory merger test.

{¶9} In evaluating merger under R.C. 2941.25, a court can find the defendant's conduct supports multiple offenses if the offenses were (1) dissimilar in import or significance, (2) similar in import but committed separately, or (3) similar in import but

committed with separate animus or motivation. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 20, 31. If any one aspect of the test is met, then multiple convictions are warranted. *Id.* Trial counsel did not request merger here. Although merger is reviewed de novo, an unraised merger issue must be an error that is obvious and prejudicial to meet the plain error test on appeal, and each case is fact-dependent. *State v. Bailey*, __ Ohio St.3d __, 2022-Ohio-4407, __ N.E.3d __, ¶ 6-16 (reversing an appellate court's use of plain error to merge offenses and stating, "it is clear to us that in an area of law so driven by factual distinctions, any asserted error was not obvious").

{¶10} In considering the first aspect of the merger test, "offenses are not allied offenses of similar import if they are not alike in their significance and their resulting harm." *Id.* at ¶ 21, 25 (offenses will be considered dissimilar in import or significance when "each offense caused separate, identifiable harm"). The import of the offense of unlawful possession of a dangerous ordnance related to Appellant's violation of the ban on sawed-off shotguns. *See* R.C. 2923.11(A); R.C. 2923.11(F),(K)(1). The significance of this offense revolves around the extraordinary harm to society the legislature sees in this type of firearm as contrasted with a standard firearm. Dissimilar in import, the offense of having a weapon under disability related to Appellant's legal status as an individual with a certain pending indictment, which prohibited his conduct of possessing any firearm (or dangerous ordnance). *See* R.C. 2923.13(A)(3). We note his firearm did not have to qualify as a dangerous ordnance for this conviction. The harm flowing from this conduct was separately identifiable in that Appellant was the type of individual the legislature views as unqualified to possess any firearm due to his prior conduct.

{¶11} After considering the offenses in conjunction with Appellant's conduct elicited at trial, a sentencing court would not commit obvious error in concluding the offenses were of dissimilar import or significance. Appellant failed to meet his burden of establishing there was a genuine issue as to whether he has a colorable claim that appellate counsel's failure to raise this issue was deficient performance that prejudiced his appeal. *See Tenace*, 109 Ohio St.3d 451 at ¶ 6.

{¶12} Second, Appellant contends appellate counsel should have argued trial counsel was ineffective for not objecting to utilization of the principle of constructive possession because the word "constructive" is not in the statutes or the indictment. Third,

Appellant relatedly argues counsel should have argued the state's reliance on constructive possession violated the ex post facto clause, claiming it retroactively changed the possession element of the offenses. The statutory elements relating to these arguments are "acquire, have, carry, or use * * *." R.C. 2923.13(A)(3); R.C. 2923.17(A). In our decision affirming Appellant's conviction, we concluded the state presented sufficient evidence of all elements required for the weapons offenses, including possession. *Anderson*, 7th Dist. No. 22 MO 0001 at ¶ 55. As we specifically explained, "a person can 'have' an object through immediate physical possession or constructive possession, which involves dominion and control." *Id.*, citing *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). We also pointed out "circumstantial evidence can be relied upon to establish constructive possession" regardless of ownership. *Id.*, quoting *State v. Floyd*, 7th Dist. Mahoning No. 18 MA 0106, 2019-Ohio-4878, 2019 WL 6358472, ¶ 16. It is a long-standing principle that constructive possession is an aspect of possession and possession satisfies the "have" element, which was contained in the statute and the indictment. It would have been wholly frivolous to argue that instructions on constructive possession changed or added an element to the weapons offenses.

{¶13} Fourth, Appellant argues appellate counsel should have raised prosecutorial misconduct because the state tried to "goad" him into a plea, which he did not accept. He says the prosecutor offered to accept a plea to two charges with a total sentencing recommendation of four years while warning it was a limited time offer because the drug charge would be resubmitted to the grand jury on a higher degree felony as the meth weighed more than the indicted amount. Appellant did not accept the offer, and re-indictment occurred on the drug charge to reflect the greater amount of drugs. He incorporates his constructive possession argument and claims the prosecutor improperly added the element to the new indictment after attempting to "goad" a plea. This argument is frivolous. In addition, on this argument and certain other claims here, Appellant does not cite to evidence in the record, and appellate counsel could not have added matter to the record. *See Anderson reconsideration denied*, 2023-Ohio-1695 at ¶ 4 (such as incident or inventory reports).

{¶14} Appellant additionally says appellate counsel should have argued the prosecutor used perjured testimony, claiming the deputy's testimony at the suppression

hearing differed from his testimony from the preliminary hearing. Within days of indictment, trial counsel had the preliminary hearing transcribed. It was not filed as part of the record. Attorneys regularly order the transcript of the preliminary hearing in county court to prepare for later cross-examination of a witness in common pleas court. Appellant suggests different subject matter constitutes an inconsistency. However, a suppression hearing has a different focus and purpose than a preliminary hearing. Moreover, Appellant's general claim of an outcome-determinative inconsistency is not supported, as noted in the denial of his application for reconsideration, in which he attached the preliminary hearing transcript. *See id.* at ¶ *2, 4.*

**{¶15}** Appellant also complains the state only played part of the body cam video for the jury, opining it should not have been stopped before other officers searched the driver's vehicle because it contained a better view of the firearm's location; he suggests the deputy would not have known the shotgun next to Appellant measured under the legal length on his initial viewing. However, suppression issues were no longer relevant at trial. Moreover, there was no objection at trial, and plain error on the record would not have been apparent to appellate counsel.

**{¶16}** Fifth, Appellant argues appellate counsel should have raised an additional suppression argument that the welfare check ended and the officer should not have ordered him out of the car once the driver was handcuffed. Sixth, he says another suppression argument should have been made about the officer asking him if the gun was loaded. Appellate counsel raised multiple suppression issues. In addressing those issues, we noted the brief did not dispute certain issues, but we then explained why they would be without merit. We pointed out a driver or passenger temporarily detained in a routine traffic or investigatory stop is not generally considered to be in custody. *Anderson*, 7th Dist. No. 22 MO 0001 at ¶ 20, citing *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (the stop is temporary, brief, public, and substantially less police-dominated than the type of interrogation at issue in *Miranda*, especially where only one officer is present). Additionally, we stated an officer is permitted to order passengers out of the vehicle during the stop. *Id.* at ¶ 21, citing *Maryland v. Wilson*, 519 U.S. 408, 413-415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). We further concluded the sawed-off shotgun was in plain view as the passenger door was opened and the deputy's question

of whether the gun was loaded was not asked during a custodial interrogation but was posed in response to the emergency situation of an occupant being removed from a vehicle while within inches of a sawed-off shotgun. *Id.*, citing *New York v. Quarles*, 467 U.S. 649, 656, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).

**{¶17}** Accordingly, the failure of counsel to complain about the deputy ordering Appellant to alight from the vehicle does not present a genuine issue on whether he has a colorable claim of *prejudice* to his appeal from the alleged deficiency. The remainder of Appellant's argument essentially seeks reconsideration of our holdings on custody, the pat-down, plain feel, and search incident to arrest. *See id.* at ¶ 25-37.

**{¶18}** Seventh, Appellant says trial counsel was ineffective for failing to object to an alleged *Brady* violation. He claims the state failed to preserve the driver's possessions and complains she was not charged for any unlawful behavior. This argument improperly relies on items outside of the record. Appellant also reiterates his prosecutorial misconduct argument about the deputy's testimony at the preliminary hearing in county court differing from his testimony at the suppression hearing in common pleas court. He believes appellate counsel should have argued trial counsel was ineffective by failing to have the preliminary hearing transcript filed in the record. We addressed this topic supra. In any event, the arguments for the seventh proposed assignment of error exceed the prescribed page limit. App.R. 26(B)(4) ("An application for reopening and an opposing memorandum shall not exceed ten pages, exclusive of affidavits and parts of the record.").[1]

**{¶19}** For the foregoing reasons, the application for reopening is denied.


**JUDGE CAROL ANN ROBB**

**JUDGE DAVID A. D'APOLITO**

**JUDGE MARK A. HANNI**

<u>**NOTICE TO COUNSEL**</u>

**This document constitutes a final judgment entry.**

---

[1] Appellant sets forth a statement of facts separately numbered, which is not the rule for reopening. He then begins his arguments at a page he numbered "0" and finishes his arguments at page 11.

<u>Case No. 22 MO 0001</u>