# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

BRIAN L. ANDERSON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MO 0001**

---

Criminal Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2021-243

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. James L. Peters*, Monroe County Prosecutor, for Plaintiff-Appellee and

Brian L. Anderson, Defendant-Appellant.

Dated: July 17, 2024

**DICKEY, J.**

{¶1}    Pro se Appellant, Brian L. Anderson, appeals from the December 12, 2023 judgment of the Monroe County Court of Common Pleas dismissing his untimely second pro se petition for postconviction relief without a hearing.  On appeal, Appellant asserts he is entitled to postconviction relief due to various due process violations, ineffective assistance of counsel, prosecutorial misconduct, and other issues that he claims arose during the pre-trial phase of his case.  Because Appellant's petition was untimely filed, no exception entitling him to relief was demonstrated, his claims are barred by principles of res judicata, and there are additionally no substantive, supporting grounds, the trial court did not abuse its discretion in dismissing his successive petition without a hearing. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2}    This court set forth the pertinent facts and procedural history underlying this matter in Appellant's direct appeal, *State v. Anderson*, 2023-Ohio-945, ¶ 2-14 (7th Dist.):

> On July 15, 2021, Appellant was indicted for unlawful possession of a dangerous ordnance, a fifth-degree felony in violation of R.C. 2923.17(A), and having a weapon while under disability, a third-degree felony in violation of R.C. 2923.13(A)(3). On August 19, 2021, he was indicted for aggravated possession of drugs in violation of R.C. 2925.11, a second-degree felony due to the amount of methamphetamine (meth), 25.89 grams (more than five times the bulk amount of 3 grams). This charge replaced a drug charge in the first indictment when the two indictments were consolidated upon the state's motion. (8/25/21 J.E.); (Tr. 3).
>
> Appellant filed a motion to suppress his statements and the meth. As to his pre-*Miranda* statement admitting the baggie in his pocket contained "dope," he claimed the deputy sheriff conducting a weapons pat-down was required to *Mirandize* him before asking if the object felt in his pants was "dope" because Appellant reasonably considered himself in custody after being

ordered out of the vehicle and handcuffed. If *Miranda* was inapplicable to that statement, the suppression motion alternatively argued the drugs should be suppressed because the removal of the baggie from Appellant's pocket was beyond the permissible scope of a weapons pat-down and the deputy thus needed a search warrant to remove it from his pocket, claiming Appellant was not placed under arrest before the removal. Lastly, as to post-*Miranda* statements, Appellant's motion to suppress claimed he did not understand the *Miranda* rights recited by the deputy during the pat-down.

At the November 15, 2021 suppression hearing, the state played the body-cam video for the court and presented the deputy's testimony. (St.Ex. 3). The deputy testified he was on patrol at 9:30 a.m. on June 10, 2021 when he conducted a roadside welfare check on the two occupants of a car pulled to the side of State Route 7. (Supp.Tr. 6-7). The driver's window was rolled down. (Supp.Tr. 10). The female in the driver's seat had "a Methamphetamine smoking device protruding" from her low-cut top (seemingly tucked into her bra); it was further described as a glass pipe with a ball at the end. (Supp.Tr. 8-9). Appellant was in the passenger seat.

The deputy said they both appeared to be in a heavy sleep or passed out as if under the influence of a substance. (Supp.Tr. 7-9). To rouse the occupants, the deputy said "hey," knocked on the car door, and said "hey" again. The deputy believed the occupants seemed confused about their location; he observed the female's eyes were red. (Supp. Tr. 10, 12). The deputy ordered her out of the vehicle, placed her in handcuffs, and confiscated the glass pipe. (Supp.Tr. 10-11).

Before leading the female to sit on the front bumper of his police cruiser, the deputy instructed Appellant to place his hands on the dashboard. According to the deputy, Appellant kept removing his hands from the dashboard and moving abruptly. (Supp.Tr. 11). Upon returning to remove Appellant from the vehicle, the deputy asked Appellant to unlock the passenger door.

When the door opened, the deputy viewed a sawed-off shotgun between the passenger seat and the passenger door. He could see it violated the law as a dangerous ordnance (a shotgun with less than 18 inches of barrel or less than 26 inches in overall length). (Supp.Tr. 12-13). The shotgun was within easy access of Appellant. (Supp.Tr. 13-14). While Appellant stepped from the car, the deputy asked if the gun was loaded. From the deputy's next statement on the body cam, it seems Appellant said it was not loaded (and the deputy testified at trial that Appellant said it was not loaded).

To prevent access to the gun and fearing an additional weapon, the deputy handcuffed and frisked Appellant. (Supp.Tr. 15-16). The deputy testified about patting down Appellant's front pocket as follows: "through my training and experience, I felt what appeared to be a foreign substance, like a narcotic, a pretty large bag. (* * *) I knew it was a narcotic." He said to Appellant, "is this dope? It feels like dope." Appellant replied, "yes, it is dope." (Supp.Tr. 15-16). The deputy explained the amount of drugs in the baggie felt substantial and the pocket bulge was visible. (Supp.Tr. 18). The deputy opined Appellant was not formally under arrest during the pat-down but explained he would have eventually taken Appellant to jail and charged him with possession of a dangerous ordnance as a result of the sawed-off shotgun (even if drugs had not been discovered in Appellant's pocket). (Supp.Tr. 19, 25-26).

After Appellant acknowledged the bulge was dope, the deputy provided *Miranda* warnings. When the deputy asked if he understood the rights, Appellant "just kept like becoming frustrated with the situation" or "getting agitated." (Supp.Tr. 22, 27). The deputy testified he had no reason to believe Appellant lacked the capacity to understand him, stating Appellant did not seem so intoxicated that he could not understand *Miranda* rights. (Supp.Tr. 22-23). The deputy again asked if Appellant understood his rights while explaining he wanted to ask if the bag contained fentanyl due to

concerns about exposure; Appellant then said it was not fentanyl. (Supp.Tr. 16).

The deputy then removed the baggie from Appellant's pockets. Other deputies arrived, and a search of the car revealed additional contraband, which was claimed by the driver and resulted in charges against her. (Supp.Tr. 19). Appellant later admitted he smoked meth at some earlier point and said a man provided it in exchange for a ride. (Supp.Tr. 22-23, 26, 29). When filing his report later, the deputy discovered Appellant was under a firearm disability.

After hearing this testimony, the trial court denied the motion to suppress. In the December 28, 2021 judgment entry, the court concluded the question asking whether the bulge was dope was mere on-scene investigative questioning, which did not trigger *Miranda*, citing *State v. Gaston*, 110 Ohio App.3d 835, 675 N.E.2d 526 (11th Dist. 1996). Based on Appellant's answer identifying the bulge as dope, the court found the officer was permitted to retrieve the illegal item from the pocket. The court also found the deputy was permitted to remove the baggie under the plain feel doctrine, finding it was immediately apparent to the deputy that the bulge in Appellant's pants was drugs. It was noted the deputy's mid-pat-down question on whether the bulge was dope was immediately followed by his observation that it felt like dope. As to post-*Miranda* statements, the court concluded Appellant understood the rights recited to him.

At the jury trial, the arresting deputy's body camera video was played for the jury. (Tr. 147); (St. Ex. 3, to 13-minute mark). A BCI forensic scientist testified the substance submitted by the state was meth and weighed 25.89 grams. (Tr. 113, 115). She explained meth was a schedule II controlled substance with a bulk amount of 3 grams. (Tr. 115-116). The deputy's trial testimony repeated much of the testimony he gave at the suppression hearing (summarized supra). He additionally noted the drugs weighed

28.31 grams while in the baggie, as confirmed by a photograph of the baggie on a scale. (Tr. 132); (St.Ex. 2). A photograph of items recovered from the vehicle was also admitted. (St.Ex. 4). The deputy noted while the driver claimed ownership of various items, including meth pipes, she did not claim ownership of the shotgun.

The deputy pointed out Appellant said the gun was not loaded but also said it belonged to a person who was previously in the car. (Tr. 129, 134). The deputy testified the shotgun's barrel measured only 12 inches, and a photograph of it next to a tape measure was admitted. (Tr. 135); (St.Ex. 5). The shotgun had a trigger, a hammer, and an intact firing pin. It was considered a safety hazard to test fire the shotgun with a live round due to the short barrel (and what he believed was a pistol grip modification). However, a "dry fire" was conducted where the hammer was pulled back, the trigger was pulled, and the firing pin was observed to be operating as expected. (Tr. 135-137). The parties stipulated Appellant was under indictment for felony possession of drugs in Summit County at the time in question (an element of having a weapon while under disability). (Tr. 4, 104, 176).

The jury found Appellant guilty of all three offenses. The court sentenced Appellant to 4 to 6 years for aggravated drug possession (for which prison was mandatory), 30 months for having a weapon while under disability, and 11 months for unlawful possession of a dangerous ordnance, all to run concurrently. (1/31/22 J.E.). *See* R.C. 2925.11(C)(1)(c) and R.C. 2929.13(F)(5) (mandatory prison for the drug offense regardless of community control factors).

*Anderson*, 2023-Ohio-945, at ¶ 2-14 (7th Dist.).

{¶3} Appellant filed a timely appeal, Case No. 22 MO 0001. During the pendency of that appeal, on December 12, 2022, Appellant filed a pro se petition in the Monroe County Court of Common Pleas for postconviction relief pursuant to R.C. 2953.21 seeking

to vacate his convictions. On January 19, 2023, the trial court dismissed Appellant's petition without a hearing.

**{¶4}** In his direct appeal, Appellant argued the trial court should have suppressed his statement before he was *Mirandized*, the methamphetamine recovered from his pocket after he acknowledged he had drugs, and his statements after he was *Mirandized. Anderson* at ¶ 1, 15-44. Appellant also challenged the sufficiency of the evidence and the weight of the evidence as to the operability of the gun recovered, contesting whether the gun met the definition of a firearm. *Id.* at ¶ 1, 45-58. On March 23, 2023, this court affirmed Appellant's convictions. *Id.* at ¶ 1, 59.

**{¶5}** Thereafter, Appellant filed a pro se application for reconsideration which this court denied on May 18, 2023. *State v. Anderson*, 2023-Ohio-1695 (7th Dist.). Appellant filed a pro se application for reopening claiming his appellate counsel rendered ineffective assistance which this court denied on September 14, 2023. *State v. Anderson*, 2023-Ohio-3335 (7th Dist.). Appellant filed a pro se motion for reconsideration of our denial of his application for reopening which this court denied on December 6, 2023. *State v. Anderson*, 2023-Ohio-4447 (7th Dist.).

**{¶6}** At issue here, on September 13, 2023, Appellant filed a second pro se petition in the Monroe County Court of Common Pleas for postconviction relief pursuant to R.C. 2953.21 seeking to vacate his convictions. Appellant maintains he is entitled to postconviction relief due to various due process violations, ineffective assistance of counsel, prosecutorial misconduct and other issues that he claims arose during the pre-trial phase of his case. In support, Appellant simply attached a "cut-and-pasted" copy of the brief he had previously submitted to this court to reopen his appeal in *Anderson*, 2023-Ohio-3335, which we denied. Appellant merely crossed out "Brief In Support of App.R. 26(B)" and wrote in "Memorandum In Support of 2953.21." (9/13/2023 Appellant's Petition to Vacate, Attachment).

**{¶7}** On November 9, 2023, the State filed a memorandum in opposition asserting that Appellant's argument should fail for the same reasons this court stated in *Anderson*, 2023-Ohio-3335, in which we found appellate counsel was not ineffective for failing to raise seven additional assignments of error, involving: (1) merger of the two weapons offenses before sentencing; (2) trial counsel not objecting to utilization of the

principle of constructive possession; (3) trial counsel should have argued the State's reliance on constructive possession violated the ex post facto clause; (4) prosecutorial misconduct; (5) and (6) failure to raise additional suppression arguments; and (7) trial counsel was ineffective for failing to object to an alleged *Brady* violation. *Id.* at ¶ 7-18. The State also indicated Appellant's petition is untimely, based upon insufficient evidence, and barred by res judicata.

**{¶8}** On December 12, 2023, the trial court dismissed Appellant's second pro se petition for postconviction relief without a hearing. Specifically, the court found the following: Appellant's claims fail because his petition is untimely and barred by the doctrine of res judicata; Appellant already filed a petition for postconviction relief which was denied; successive postconviction petitions are generally barred; Appellant failed to show evidence supporting substantive grounds for relief; Appellant's claims regarding ineffective assistance of counsel fail because he cannot satisfy either prong under *Strickland v. Washington,* 466 U.S. 668 (1984); the Seventh District Court of Appeals already addressed Appellant's various claims and provided reasons as to why his claims fail; and res judicata applies to direct appeals as well as all postconviction proceedings in which an issue was or could have been raised. (12/12/2023 Judgment Entry, p. 1-3, 5-7).

**{¶9}** Appellant filed the instant appeal, Case No. 24 MO 0001, and raises two assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN VIOLATION OF APPELLANT'S RIGHTS PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY DENYING APPELLANT SUPPRESSION OF EVIDENCE – PREJUDICE – PROCEDURAL DEFAULT UNDER CONSTITUTIONAL LAW.**

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN VIOLATION OF APPELLANT'S RIGHTS PURSUANT TO THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS**

**WITH ITS BLANKET DENIAL OF "RES JUDICATA" ON "SUBSTANTIVE GROUNDS FOR RELIEF" UNDER THE R.C. 2953.21.**

{¶10} In his first and second assignments of error, Appellant argues he is entitled to postconviction relief due to various due process violations, ineffective assistance of counsel, prosecutorial misconduct, and other issues that he claims arose during the pre-trial phase of his case. Because both of Appellant's assignments stem from his assertion that the trial court erred in dismissing his second pro se petition for postconviction relief without a hearing, we will address them together for ease of discussion.

Post-conviction relief is a collateral civil attack on a criminal judgment. *State v. Steffen*, 70 Ohio St.3d 399, 410, 1994-Ohio-111, 639 N.E.2d 67. R.C. 2953.21 through R.C. 2953.23 govern petitions for post-conviction and provide that "any defendant who has been convicted of a criminal offense and who claims to have experienced a denial or infringement of his or her constitutional rights may petition the trial court to vacate or set aside the judgment and sentence." *State v. Martin*, 7th Dist. No. 12 MA 167, 2013-Ohio-2881, ¶ 13.

We apply an abuse of discretion standard when reviewing a trial court's decision to deny a post-conviction relief petition without a hearing. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 58. "Abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *State v. Dixon*, 7th Dist. No. 10 MA 185, 2013-Ohio-2951, ¶ 21.

"(P)ursuant to R.C. 2953.21(C), a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 291, 1999-Ohio-102, 714 N.E.2d 905. Substantive

Case No. 24 MO 0001

grounds for relief exist where there was a denial or infringement of the petitioner's constitutional rights so as to render the judgment void or voidable. *State v. Cornwell*, 7th Dist. No. 00-CA-217, 2002-Ohio-5177, ¶ 25.

*State v. Smith*, 2017-Ohio-7770, ¶ 8-10 (7th Dist.).

**{¶11}** Here, Appellant failed to attach any evidence to support his assertions. The only claims made by Appellant are his own conclusory allegations. Appellant has further failed to show, or even provide any argument whatsoever, that if his claims are proven, that the result of the trial would have been different. Thus, the trial court did not err in dismissing Appellant's successive pro se petition for postconviction relief without a hearing. *See Calhoun* at 291.

**{¶12}** "A postconviction petition may also be dismissed without a hearing where the claims are barred by res judicata." *State v. West*, 2009-Ohio-3347, ¶ 24 (7th Dist.). Res judicata bars any claim or defense that was raised or could have been raised in an earlier proceeding:

> Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St.2d 175, 180 (1967).

**{¶13}** "[R]es judicata bars claims that could have been raised on direct appeal or any previous post-judgment motions." *State v. Smith*, 2019-Ohio-4501, ¶ 8 (7th Dist.).

**{¶14}** Again, Appellant's ineffective assistance of counsel argument fails for the same reasons this court already stated in *Anderson*, 2023-Ohio-3335, since he failed to satisfy either prong under *Strickland. See State v. Bradley*, 42 Ohio St.3d 136, 141-143 (1989), citing *Strickland v. Washington*, 466 U.S. 668 (1984) (In order to demonstrate ineffective assistance of counsel, a defendant must show that trial counsel's performance fell below an objective standard of reasonable representation, and prejudice arose from the deficient performance.)

Case No. 24 MO 0001

**{¶15}** In addition, a petition for postconviction relief must be filed within the statutorily prescribed time. R.C. 2953.21(A)(2)(a) states a postconviction petition "shall be filed no later than three hundred sixty-five days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction . . ."

**{¶16}** R.C. 2953.23 provides an exception to the 365-day requirement. According to R.C. 2953.23(A)(1), a petitioner may file a delayed petition only if both of the following subsections apply:

> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted . . .

R.C. 2953.23(A)(1)(a)-(b).

**{¶17}** In this case, the record establishes the trial transcripts were filed in Appellant's direct appeal on March 17, 2022. Appellant did not file the postconviction petition at issue until September 13, 2023, about six months beyond the 365-day deadline. *See* R.C. 2953.21(A)(2)(a). Thus, Appellant's petition was untimely filed. Therefore, unless Appellant can demonstrate an exception entitling him to relief, his petition is untimely and the trial court was without jurisdiction to consider it. *See* R.C. 2953.23(A)(1)(a)-(b).

**{¶18}** Upon review, Appellant fails to demonstrate an exception for the delay under R.C. 2953.23. Appellant does not establish that he was unavoidably prevented from discovery of the facts upon which he bases his claims or that there is a new state or

federal right that applies to his situation. *See* R.C. 2953.23(A)(1)(a). Appellant also does not establish by clear and convincing evidence that, but for a constitutional error at trial, no reasonable factfinder would have found him guilty of the offenses of which he was convicted. *See* R.C. 2953.23(A)(1)(b). Thus, Appellant's petition does not meet the exceptions for an untimely petition set forth in R.C. 2953.23, and as a result, the trial court was without jurisdiction to consider the claims raised within.

{¶19} As stated, even assuming arguendo that Appellant's petition was timely filed or that it satisfied R.C. 2953.21 or 2953.23, the petition failed to state substantive grounds for relief. Also, Appellant's claims were raised or could have been raised on direct appeal or in his first petition for postconviction relief. They are, therefore, barred by res judicata. *See Perry,* 10 Ohio St.2d at 180-181.

{¶20} Because Appellant's second pro se petition for postconviction relief was untimely filed, no exception entitling him to relief was demonstrated, his claims are barred by principles of res judicata, and there are additionally no substantive, supporting grounds, the trial court did not abuse its discretion in dismissing his petition without a hearing.

{¶21} Appellant's first and second assignments of error are without merit.

## CONCLUSION

{¶22} For the foregoing reasons, Appellant's assignments of error are not well-taken. The December 12, 2023 judgment of the Monroe County Court of Common Pleas dismissing Appellant's untimely second pro se petition for postconviction relief without a hearing is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

Case No. 24 MO 0001

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**